IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JONATHAN BURRS, SR., )
)
    Plaintiff, )
)
v. ) 1:16-CV-1149
)
WALTER KIDDE PORTABLE )
EQUIPMENT, INC., )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Jonathan Burrs, contends his employer, Walter Kidde Portable Equipment, Inc., retaliated against him by creating a hostile work environment leading to his constructive discharge. The Court will grant Kidde's motion for summary judgment because the evidence does not show a hostile work environment or a causal connection between the allegedly protected activity and the allegedly retaliatory acts. Nor has Mr. Burrs rebutted Kidde's evidence of legitimate, non-retaliatory reasons for its conduct.

## THE EVIDENCE

At summary judgment, the Court views the evidence in the light most favorable to Mr. Burrs, the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).[1] Therefore, the Court will not recite conflicting evidence supporting Kidde's

---

[1] The Court has reviewed the evidence referenced in the parties' briefs, but it has not scoured the record to locate support for factual assertions in the briefs that are not accompanied by a citation to evidence. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also*

view of the case, unless helpful to provide context. The Court has included Kidde's evidence that Mr. Burrs has not contradicted.

Mr. Burrs, a black man, was a business analyst in Kidde's customer service department from May 2014 until November 2015. Doc. 53 at ¶¶ 3, 64, 122. In September 2014, Karol Fritz, an IT Manager, denied Mr. Burrs access to a "fat client software utility." Doc. 50-2 at 16-21. Mr. Burrs emailed Ms. Fritz's boss, asserting that Ms. Fritz had access to a fat client when she worked as a business analyst and questioning why he was being treated differently. Doc. 53 at ¶¶ 55-56. Mr. Burrs then asked someone else in IT for access to the fat client. Doc. 50-19 at ¶¶ 6-7.

On October 12, 2014 Ms. Fritz began an investigation into Mr. Burrs for violating protocol. Doc. 53 at ¶ 60. The next day, she berated him in a meeting. *Id.* at ¶ 61. On October 14, Mr. Burrs told Human Resources Manager Curtis Thornton that Ms. Fritz was treating him differently because he was black. Doc. 50-2 at 32; Doc. 53 at ¶¶ 62-67.[2]

In November 2014, Mr. Burrs sent an email to the Human Resources Director, Andrea Sirko-Delancey, in which he criticized the professional abilities of Ms. Fritz and Mr. Thornton. Doc. 50-7 at 9; Doc. 50-2 at 52-54. In December, Mr. Burrs sent another email to Ms. Sirko-Delancey criticizing IT management. Doc. 50-7 at 5-8. He copied

---

*Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 395-96 (4th Cir. 1994) (noting that the district court is "well within its discretion in refusing to ferret out the facts that counsel had not bothered to excavate").

[2] The evidence shows that this was Mr. Burrs' first report of discrimination. In his complaint, Mr. Burrs says he first complained of race or gender discrimination in September 2014, Doc. 1 at ¶ 14, but the email he cites contains no reference to race or gender discrimination. *See* Doc. 50-5 at 2.

Jim Ward, the Division President, and Nancy Davis, the Vice President and Chief Information Officer, on the email. *Id.* at 5; Doc. 50-2 at 58-60. He did not complain of gender or race discrimination in either email. Doc. 50-7 at 5-9.

Ms. Sirko-Delancey and Suzanne Turner, Mr. Burrs' second line supervisor, met with Mr. Burrs twice in January 2015 to discuss the emails, Doc. 50-2 at 64; they criticized him as "arrogant" and a poor communicator. Doc. 53 at ¶ 70. Mr. Burrs had an anxiety attack after the January 16 meeting and left work early. *Id.* at ¶ 74. On January 27, Mr. Thornton sent Mr. Burrs an email addressing his late arrival to work the day before and his early departure on January 16. Doc. 50-8 at 6. Mr. Burrs admits he was late to work on January 26 and left early on January 16. Doc. 53 at ¶¶ 74-76.

In February 2015, Ms. Turner gave Mr. Burrs a negative rating on his 2014 performance evaluation. Doc. 50-2 at 71-72; Doc. 50-8 at 9-10. Later that month, Mr. Burrs filed an Ombudsman complaint asserting that the bad performance review was in retaliation for his reporting of Sarbanes Oxley violations. Doc. 50-8 at 13-14; Doc. 50-19 at ¶ 3. In March, Mr. Burrs complained of race and gender discrimination while meeting with Ombudsman Investigator Stephanie Murphy. Doc. 53 at ¶¶ 89-90; Doc. 50-2 at 119.

Around late March 2015, Mr. Burrs applied for an "IT Leader" position. Doc. 53 at ¶ 88. He was not hired, but says that he was qualified. *Id.* at ¶¶ 88, 100. Mr. Ward made the hiring decision for the position. Doc. 50-2 at 124.

On August 18 and 19, 2015, Mr. Burrs again sent several emails directly to Mr. Ward, the Division President. Doc. 50-9 at 3-6. Ms. Turner told Mr. Burrs that "sending emails and copying folks who have no reference or context as to what you are sending is

3

not productive" and advised him to talk with people who could help resolve the issues "rather than launching grenades via email." *Id*. at 6. She also expressed "concern" that Mr. Burrs was "reverting back to using ineffective forms of communication that we addressed earlier this year." *Id*. When he again copied Mr. Ward on an email, Ms. Turner instructed him to stop and said that she would meet with him to discuss his poor judgment. *Id.* at 4. Mr. Burrs left work after receiving her email, saying he was suffering from anxiety. *Id.* at 3-4.

Mr. Burrs never returned to work, instead taking medical leave from August 20 through late-October. Doc. 50-2 at 79, 112-14. He resigned in early-November 2015. Doc. 50-9 at 2-3. He says his resignation was "involuntary." *Id.* at 2.

## PROCEDURAL BACKGROUND

Mr. Burrs filed his EEOC charge on December 8, 2015, Doc. 21, and this lawsuit followed in 2016. Doc. 1. In April 2017, this Court granted Kidde's motion for judgment on the pleadings as to all claims except the retaliation-by-hostile-work-environment claim. Doc. 22. Kidde has filed a motion for summary judgment on this remaining claim. Doc. 49.

## DISCUSSION

Charges with the EEOC must be filed within 180 days of each discrete adverse employment action described in the complaint. *See, e.g.,* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Lawsuits

brought thereafter are ordinarily limited to discriminatory conduct occurring within that 180 day timeframe.

As to the events occurring after June 11, 2015, 180 days before Mr. Burrs filed his EEOC complaint, he has not shown a hostile work environment. He has identified only two events that occurred after June 10, 2015: an August 18 email from his supervisor expressing concern that he had copied company management on emails and an email a day later instructing him to stop copying company management on emails and expressing an intent to schedule a meeting to discuss the matter. Doc. 50-9 at 4-6. This is insufficient to constitute a retaliatory hostile work environment in violation of Title VII. *See Clarke v. DynCorp Int'l. LLC*, 962 F. Supp. 2d 781, 790-91 (D. Md. 2013) (holding that for a hostile work environment to satisfy the "adverse employment action" prong, the plaintiff must show either that the "environment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" or that the defendant's conduct was sufficiently severe or pervasive as to create a hostile work environment).[3]

Under the continuing violation doctrine, however, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

---

[3] Mr. Burrs has not directed the Court's attention to any direct evidence of discrimination, and the Court has evaluated his claim under the *McDonnell-Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of retaliation-by-hostile-work-environment leading to constructive discharge, a plaintiff most prove: (1) he engaged in a protected activity, (2) the defendant took an adverse employment action against him by creating a hostile work environment, and (3) there was a causal link between the two events. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989); *see also Clarke,* 962 F. Supp. 2d at 790-91.

In order for the continuing violation doctrine to apply, the plaintiff has the burden to show that the hostile acts occurring outside the filing period were not isolated incidents and that at least one anchoring incident occurred during the filing period. *Id.* at 116–17; *see also Edward v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 621 (E.D. Va. 2011) ("in order for several events to qualify as part of the same hostile work environment, all of the incidents must be so significantly related to each other as to comprise one unitary and ongoing unlawful employment practice.").

Here, Mr. Burrs has not met that burden. The two August emails, Doc. 50-9 at 4-6, came months after he was passed over for a promotion, the last previous event Mr. Burrs contends was part of the hostile work environment. Nor has Mr. Burrs shown that the scattered incidents occurring over an eight-month period before June 2015 were anything more than isolated occurrences. Indeed, even considering all of the post-October 14, 2014, acts, they are insufficient to constitute a hostile work environment. Nothing else appearing, a couple of meetings and a few emails over the course of many months to address work-related problems do not constitute a hostile work environment.[4] *See Clarke*, 962 F. Supp. 2d at 791.

---

[4] The Court questions whether the plaintiff can use the continuing violation doctrine as a back door to recover for retaliation claims based on a failure to promote and a bad performance review that are themselves untimely. Assuming that the plaintiff can use the continuing violation doctrine as a back door to recover for retaliation claims based on a failure to promote and a bad performance review, Kidde has offered legitimate non-discriminatory reasons for those decisions. Doc. 50 at 18; Doc. 50-2 at 107-109 (Mr. Burrs describing qualifications of the individual hired as IT Leader); Doc. 50-8 at 10 (Ms. Turner's explanations for her ratings of Mr. Burrs). Mr. Burrs has offered no evidence rebutting those reasons.

6

Even assuming that Kidde's conduct created a hostile work environment, Mr. Burrs has not established a prima facie case because he has not shown a causal link between the protected activity and the purportedly retaliatory acts. He first complained about racial discrimination on October 14, 2014.[5] Doc. 53 at ¶¶ 62-67. No conduct before that date could be in retaliation for his complaint of race discrimination. *See Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Thus, Mr. Burrs' dispute with Ms. Fritz over the "fat client" and her initiation of an ethics investigation are not evidence of a retaliatory hostile work environment.

As to the remaining actions of Ms. Turner, Ms. Sirko-Delancey, and Mr. Ward, Mr. Burrs testified that he never told them that he had concerns about race or gender discrimination, Doc. 50-2 at 31-34, 118-19, and that none of them knew he had complained of race or gender discrimination. *Id.* at 35-36, 124-25. If the actors had no knowledge of Mr. Burrs' protected activity, their actions could not be in retaliation for that protected activity. *See Dowe,* 145 F.3d at 657 (finding knowledge "absolutely necessary" to support causation).

---

[5] The Court assumes without deciding that Mr. Burrs engaged in a protected activity when he told a human resources manager on October 14, 2014, that he was being treated differently because he was black. Doc. 53 at ¶¶ 62-67. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures . . . to bring attention to an employer's discriminatory activities.").

There is evidence that Mr. Thornton and Ms. Murphy knew of Mr. Burrs' claim of racial discrimination. As to Ms. Murphy, the ombudsman to whom Mr. Burrs complained of discrimination in late March 2015, Doc. 50-2 at 119 and Doc. 53 at ¶ 90, Mr. Burrs has identified no evidence that she took any action contributing to a hostile work environment. As to Mr. Thornton, his only allegedly retaliatory act was the January 2015 email addressing Mr. Burrs' attendance issues. This email was sent several months after Mr. Burrs complained to Mr. Thornton of discrimination, *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (noting cases showing that three- and four-month lapses of time are too long to infer causation), and there is no other evidence showing that Mr. Thornton sent the email for a retaliatory purpose. *See Dowe,* 145 F.3d at 657 ("[T]he employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity."). Moreover, one email about an attendance issue is not sufficient to establish a hostile work environment.

Even assuming that Mr. Burrs did put forth a prima facie case, Kidde offers legitimate, non-discriminatory reasons for the allegedly retaliatory acts. *See Baqir v. Principi,* 434 F.3d 733, 747 (4th Cir. 2006). Kidde offers evidence that the two January 2015 meetings were needed to talk with Mr. Burrs about copying the Division President on emails about technical issues outside of the chain of command, as were Ms. Turner's August 2015 emails. *E.g.,* Doc. 56-1 at ¶¶ 7-8, 11. Likewise, Mr. Burrs admits the attendance issues that were the subject of Mr. Thornton's email. Doc. 53 at ¶¶ 74-76; *see also supra* n. 4 (discussing legitimate, non-discriminatory reasons for performance review and failure to promote).

8

To oppose Kidde's summary judgement motion, Mr. Burrs offers his own opinion that the identified acts were retaliatory along with conclusory assertions to the same effect. *E.g.,* Doc. 53 at ¶ 87. Both are insufficient to create a disputed question of material fact. Fed. R. Civ. P. 56(c)(4); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory, or based upon hearsay.") (internal citations omitted); *Mackey v. Shalala,* 360 F.3d 463, 469-70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions . . . are insufficient to establish a *prima facie* case of discrimination."). In sum, he has not rebutted Kidde's legitimate, non-discriminatory reasons or otherwise offered any evidence showing that Kidde's proffered reasons are pretext. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) (noting that an employee's disagreement with an employer's explanation does not prove that the explanation was dishonest or pretextual).

## CONCLUSION

Viewed in the light most favorable to Mr. Burrs, the evidence discloses that he had a series of disagreements with his supervisors and engaged in disruptive communications unrelated to his claims of discrimination. His supervisors responded with a few meetings and emails, which are insufficient to show a hostile work environment and were not temporally related to his complaints of discrimination, of which the supervisors were unaware. The one manager who was aware of the complaints sent only one email related to an attendance issue, the underlying facts of which Mr. Burrs admits were accurate. Likewise, the ombudsman whom he informed of his discrimination complaints engaged in no retaliatory acts.

No reasonable jury would or could conclude that Mr. Burrs has established a prima facie case of retaliation-by-hostile-work-environment leading to constructive discharge. And even if he successfully put forward a prima facie case, he has not rebutted Kidde's legitimate, non-discriminatory reasons for the Kidde supervisors' various acts. Summary judgment for Kidde is proper.

It is **ORDERED** that the defendant's motion for summary judgment, Doc. 49, is **GRANTED**.

This the 30th day of March, 2018.

_____
UNITED STATES DISTRICT JUDGE